**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSE COLON,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No.: 11-cv-1464** |
| | : | |
| **ASHFORD BUCK COUNTY, LLC d/b/a** | : | |
| **SHERATON BUCKS COUNTY HOTEL and** | : | |
| **ASHFORD TRS SAPPHIRE VI, LLC d/b/a** | : | |
| **SHERATON BUCKS COUNTY HOTEL and** | : | |
| **REMINGTON LODGING and** | : | |
| **HOSPITALITY LP and** | : | |
| **OTIS ELEVATOR COMPANY,** | : | |
| **Defendants.** | : | |

**MEMORANDUM AND ORDER**

**LYNNE A. SITARSKI** **DATE: August 9, 2012**
**UNITED STATES MAGISTRATE JUDGE**

Presently before the Court is Plaintiff's Motion to Compel Deposition of Corporate Designee of Ashford TRS. (Doc. No 27). On July 23, 2012, Defendant Ashford TRS filed a response in opposition to the motion to compel. (Doc. No. 30). On July 30, 2012, Plaintiff filed a reply. (Doc. No. 32). Thus, the matter is now ripe for determination.

## I. BACKGROUND

On April 17, 2008, a fire occurred at the Sheraton Bucks County Hotel ("Hotel") where Plaintiff worked. (Doc. No. 27, ¶2). As a result of the fire, the Hotel elevators, including the service elevator, stopped operating. (Doc. No. 27, ¶2). Defendant Otis Elevator Company ("Otis") was called to put the elevators back into working condition, and Otis apparently performed some work on the Hotel elevators at that time. (Doc. No. 30, ¶2). The next day, on

April 18, 2008, in the course of his employment, Plaintiff was using the Hotel service elevator, when the elevator doors allegedly closed on Plaintiff's arm, causing injury. (Doc. No. 27, ¶3). Plaintiff received Workers' Compensation ("WC") benefits from his employer for those injuries. (Doc. No. 30, Ex. B-4).

At all relevant times, Ashford Bucks County, LLC ("Ashford Bucks") was the owner and lessor of the Hotel; Ashford TRS Sapphire VI, LLC ("Ashford TRS") was the lessee and operator of the Hotel; and Remington Hotel and Lodging LP("Remington"[1]) was the entity responsible for managing the Hotel operations, including maintenance. Plaintiff was an employee of Remington. (Doc. No. 27, ¶¶ 1, 4-7) (Doc. No. 30, Ex. B-4).

On March 2, 2011, Plaintiff filed suit against the Hotel owner (Ashford Bucks), the Hotel operator (Ashford TRS), and the elevator repair company (Otis), for negligence. Plaintiff has also named "Remington Lodging and Hospitality LP" as a Defendant. (Doc. No. 1). However, as noted below, Defendant "Remington Hotel and Lodging LP," is actually "Remington Lodging & Hospitality, LLC." It also appears that this Remington Defendant was Plaintiff's employer, not the non-party "Remington Hotel Corporation" incorrectly identified in the underlying worker's compensation documents. (Doc. No. 7, ¶ 10)(Doc. No. 30, Ex. B-4, ¶¶ 7-10).

On March 21, 2011, Otis filed an Answer to the Complaint and a Crossclaim against the Ashford Bucks, Ashford TRS, and Remington. On March 23, 2011, Ashford Bucks, Ashford TRS, and Remington filed an Answer to the Complaint and a Crossclaim against Otis. Answers to the crossclaims were filed on March 28, 2011 and July 12, 2011. The cross-claimants each

---

[1] Defendant Remington Lodging & Hospitality, LLC is incorrectly named as "Remington Lodging and Hospitality LP." (Doc. No. 7).

assert liability based on an elevator maintenance contract between Otis and the former owner of the Hotel, "Household OPEB 1 Inc. d/b/a Sheraton Bucks County Hotel" ("Maintenance Contract"). The Maintenance Contract was assumed by Ashford Bucks upon purchase of the Hotel, and the obligations and liabilities associated with that Maintenance Contract were later transferred to the Hotel lessee, Ashford TRS. (Doc. No. 30, Ex. D, 19:14-24)(Doc. No. 30, Ex. B-4, ¶ 6).

As part of his case, Plaintiff claims that Ashford Bucks had a non-delegable duty to keep the elevator in good repair. Plaintiff also argues that the Ashford TRS bears responsibility, because the elevator Maintenance Contract, which was assumed by Ashford TRS as part of its lease agreement, requires "surveillance." (Doc. No. 27). As stated above, the Maintenance Contract was assumed by Ashford Bucks upon purchase of the Hotel, and the obligations and liabilities associated with that Maintenance Contract were later transferred to the Hotel lessee, Ashford TRS. (Doc. No. 30, Ex. D, 19:14-24)(Doc. No. 30, Ex. B-4, ¶ 6).

**A. Relevant Discovery**

On March 9, 2012, Plaintiff served a Notice of Deposition of Corporate Designee upon Ashford TRS ("Notice of Deposition"). (Doc. No. 27, Ex. B). The Notice of Deposition listed seven matters for examination. (Doc. No. 27, Ex. B). In general, Plaintiff sought a corporate representative from Ashford TRS to testify about: the Hotel management agreement, the elevator Maintenance Contract, the surveillance agreement, and the identity of the person responsible for decisions about elevator maintenance and repair. (Doc. No. 27, ¶ 9). In response to the Deposition Notice, Defendants produced for deposition James L. Cowen (General Counsel of Remington), Scott Hagen (General Manager of the Hotel), and Albert Granholm (Vice-President

of Facilities and Engineering of Remington). (Doc. No. 30, at 2). Defendants also designated, but Plaintiff has not deposed, David Kimichik, an officer of Ashford TRS. (Doc. No. 30, Ex. C).

On June 20, 2012, just before the close of fact discovery,[2] Plaintiff's counsel requested the Court's assistance in resolving corporate designee issues between the parties. The Court held a telephone conference with counsel for both parties, and instructed counsel to continue trying to work out the matter. (Doc. No. 26). On July 10, 2012, after efforts to resolve this dispute proved fruitless, Plaintiff filed this motion to compel. (Doc. No. 27).

As stated above, Plaintiff served a timely Deposition Notice upon Ashford TRS. The areas of examination, and Defendants' response, is outlined as follows:

1. the Maintenance Contract between Ashford TRS and Otis;
   RESPONSE: Scott Hagen and James Cowen testified about the Otis Maintenance Contract.
2. all payments made by Ashford TRS relative to fire and restoration as a result of the fire that occurred at the Hotel on April 18, 2009;
   RESPONSE: Defendants have provided all proofs of payment for the repairs by Otis and by Belfor Property Restoration after the fire.
3. the surveillance conducted by Ashford TRS under the terms of the elevator Maintenance Contract;
   RESPONSE: Scott Hagen has testified that there was no "video" surveillance, but there was surveillance by employees, including Mr. Hagen, when using the elevator. Further, the Affidavit of James L. Cowen explains that Ashford TRS had a management agreement with Remington whereby Remington was responsible for running the day-to-day operations of the Hotel, including maintenance.
4. the reasons why there was no surveillance if none was conducted;
   RESPONSE: There was no video surveillance, but, as Scott Hagen testified, there was surveillance by employees who used the elevators. *See also* No. 3, above.
5. the duties and responsibilities of Ashford TRS relative to the Hotel Master Management Agreement between Ashford TRS and Remington;
   RESPONSE: James L. Cowen is most knowledgeable on this subject.

[2] Per the Court's Second Amended Scheduling Order, all fact discovery was to have been completed by June 25, 2012. (Doc. No. 23).

6. the individual responsible for managing the elevator repair and/or reconstruction and/or water restoration from the fire at the Hotel on April 18, 2009; and

RESPONSE: Since the fire was an insurance event, Al Granholm, VP of Facilities & Engineering for Remington, would have taken the lead on directing the repairs for the elevators.

7. the payments made to Otis relative to the Maintenance Contract.

RESPONSE: Per Scott Hagen, the invoices are processed by the Hotel accounting department and approved by the corporate office to execute payment by Mr. Hagen.

**B. Plaintiff's Motion to Compel**

Plaintiff complains that Defendants have been unable to identify a person who works for Ashford Bucks or Ashford TRS competent to testify regarding the Maintenance Contract, the surveillance agreement, or repairs to the elevators. (Doc. No. 27, ¶ 11). Plaintiff contends that "no corporate deponent has been supplied." (Doc. No. 27, ¶ 10). Plaintiff acknowledges that Ashford TRS offered Scott Hagen and James Cowen as witnesses, but Plaintiff complains that said witnesses already testified that they had "no knowledge of Defendant Ashford [TRS]." (Doc. No. 27, ¶ 10). Plaintiff seeks a designee capable of *binding* Ashford TRS. (Doc. No. 27, at 7).

Defendants responds that "Ashford TRS [] is an entity that has no employees . . . . [and] there is not a corporate representative with knowledge of all of the items (1 to 7) in Schedule A of [Plaintiff's] corporate designee deposition notice." (Doc. No. 30, Ex. C). Defendants also explain that Remington, not the Ashford entities, was operating the Hotel, and, therefore, there is no designee from the Ashford entities with knowledge of all the areas listed in the deposition notice. (Doc. No. 30, ¶ 11). Instead, Messrs. Cowen, Hagen, and Granholm *were designated and produced* to collectively respond to the deposition notice. (Doc. No. 30, ¶ 18). Defendants

also offered David Kimichick as an Ashford TRS officer, but noted that Mr. Kimichick does not have knowledge of the matters listed in the deposition notice. (Doc. No. 30, Ex. C).

## II. STATEMENT OF THE LAW

Pursuant to Federal Rule of Civil Procedure 30(b)(6), a party may serve a notice of deposition on a corporate defendant. There are two options that a party may choose from when seeking to depose a corporation:

> 1. The deposing party may select or designate an appropriate individual from the corporation. The individual selected by the deposing party must be an officer, director, or managing agent.
> 2. The deposing party may submit questions that they wish to be answered and allow the corporation to designate its own spokesperson.

*Manning v. Mars, Ltd.*, 1986 WL 783, at *2 (E.D.Pa. 1986); *see also* Fed.R.Civ.P. 30(b)(6). Where the party seeking discovery selects the latter option, that party "must describe *with reasonable particularity* the matters for examination." Fed. R. Civ. P. 30(b)(6)(emphasis added).

"A Rule 30(b)(6) designee 'is not simply testifying about matters within his or her personal knowledge, but rather is speaking for the corporation about matters to which the corporation has reasonable access.'" *State Farm Mut. Auto. Ins. Co. v. New Horizon, Inc.*, 250 F.R.D. 203, 216 (E.D.Pa. 2008)(*quoting In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 382 (E.D.Pa.2006)). A corporate designee may be selected by a corporation that lacks personal knowledge of the specific facts, but the corporation is obligated to prepare the designee to answer the questions that are expected or known to be asked. Fed.R.Civ.P. 30(b)(6). If a witness is asked a question concerning a subject that was not identified in the deposition notice, or that

seeks information not reasonably available to the corporation, the witness need not answer the question. *New Horizon, Inc.*, 250 F.R.D. at 216. When a corporate designee is selected but lacks sufficient knowledge of the relevant facts to provide adequate responses, the onus falls on the corporation to present an additional designee capable of providing sufficient answers. *Barron v. Caterpillar, Inc.*, 168 F.R.D. 175, 176-177 (E.D.Pa. 1996).

The burden is on the corporate recipient of the notice to "make a conscientious good faith endeavor to designate the persons having knowledge of the matters sought...and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed...as to relevant subject matter." *Henrik Klinge Retained Trust v. Triumph Apparel Corp.*, 2012 WL 259989, at *3 (M.D.Pa. 2012) (*quoting Harris v. New Jersey*, 259 F.R.D. 89, 92 (D.N.J. 2007)). If necessary, the preparation for a deposition should involve the use of documents, past employees, or other sources to obtain responsive information. *Harris*, 259 F.R.D. at 92-92.

## III. DISCUSSION

Plaintiff first contends that Defendants have failed to supply a corporate deponent capable of binding Ashford TRS. However, the record shows that Defendants produced three witnesses to testify to the matters listed in the Deposition Notice. Specifically, Defendants produced Messrs. Cowen, Hagen, and Granholm. Plaintiff appears to take issue with the fact that none of these witnesses were employees of Ashford TRS. However, Defendants have represented to this Court that Ashford TRS has no employees, and there are no "corporate representatives" capable of testifying as to the matters set forth in the deposition notice. Plaintiff offers no authority to support the contention that a corporate designee must have an employment relationship with the

corporation in order to act as a designee in response to a Rule 30(b)(6) notice of deposition. The fact is, Defendants designated these witnesses as deponents for the corporation. The witnesses' ability to address the matters listed in the Deposition Notice is the critical factor, not their employment status.

Thus, the Court next considers whether the witnesses sufficiently addressed the seven items in the Notice of Deposition.

Plaintiff identifies four topics for which Defendants have allegedly failed to produce a competent corporate witness: the Hotel management agreement; the elevator Maintenance Contract; the surveillance agreement; and the identity of the person responsible for decisions about elevator maintenance and repair. As identified below, these general topics fit within the seven areas of examination listed in the Deposition Notice.

James Cowen testified about the Hotel management agreement (item No. 5 of the Deposition Notice). Mr. Cowen testified about the respective duties and responsibilities of Ashford TRS and Remington. Specifically, Mr. Cowen testified that Ashford TRS delegated responsibility for overseeing the operation and maintenance of the Hotel elevators to Remington; (Cowen Depo., 38:22-39:3; 65:12-18); Remington, not Ashford TRS, was responsible for getting the elevators repaired after the fire (Cowen Depo, 40:6-15; 65:5-22); and Ashford Bucks (as the Hotel owner and lessor) was responsible for paying for the repairs (Cowen Depo, 42:4-9; 44:1-7). Mr. Cowen explained that when the fire took place, Ashford TRS looked to its manager, Remington, "to execute on [Remington's] responsibilities for determining – everything from potentially determining the cause of the fire to determining what repairs were appropriate to overseeing the repairs that were made." (Cowen Depo., 65:12-18). Based on the Court's review

of Mr. Cowen's deposition transcript, the Court finds that Mr. Cowen competently answered questions about the Hotel management agreement. Plaintiff cites to no specific question concerning the Hotel management agreement that Mr. Cowen was unable to answer. Plaintiff's motion to compel further testimony on this topic is therefore denied.

Regarding the Maintenance Contract (item No. 1 of the Deposition Notice), Scott Hagen offered testimony concerning this issue. While the parties have not provided the Court with a complete copy of Mr. Hagen's deposition transcript, it appears that Mr. Hagen competently answered questions about the Maintenance Contract. Mr. Hagen testified that Ashford TRS had a Maintenance Contract with Otis (Hagen Depo, p. 52:17-53:2);[3] the Maintenance Contract did not cover repairs for the April 2009 fire and water damage (Hagen Depo, p. 54:23-55:2); and "surveillance" required under the Maintenance Contract was performed by monitoring throughout the day (Hagen Depo, p. 57:19-27). Plaintiff cites to no specific question concerning the Maintenance Contract that Mr. Hagen was unable to answer. Plaintiff's motion to compel further testimony as to this category is therefore denied.

Mr. Hagen was also designated to answer questions about the surveillance agreement (item Nos. 3 and 4 of the Deposition Notice). Mr. Hagen testified that surveillance required pursuant to the Maintenance Contract was performed by monitoring throughout the day by Hotel employees (Hagen Depo, p. 57:19-27). Plaintiff cites to no specific question concerning the surveillance agreement that Mr. Hagen was unable to answer. Plaintiff's motion to compel further testimony as to this category is therefore denied.

---

[3] James Cowen likewise testified that Ashford TRS had a Maintenance Contract with Otis. (Cowen Depo., 19:8-12).

James Cowen testified about the identity of the person(s) responsible for decisions about elevator maintenance and repair (item No. 6 of the Deposition Notice). Mr. Cowen testified that Scott Hagen and Mark Sharkey were involved in making decisions regarding the elevator repairs after the fire. (Cowen Depo, 43:8-20). Mr. Cowen also explained that Ashford Bucks would have been consulted regarding the repairs, since that entity was responsible for paying for them. (Cowen Depo., 44:1 - 45:16). Mr. Cowen also explained that the elevator repair bills were directed to Remington, because that entity was responsible for overseeing the renovation of the elevators. (Cowen Depo., 56:3-12). Plaintiff cites to no specific question concerning persons responsible for managing elevator maintenance and repair that Mr. Cowen was unable to answer.[4] Plaintiff's motion to compel further testimony as to this category is therefore denied.

The two remaining topics in the Deposition Notice (Nos. 2 and 7) seek information about payments for elevator maintenance and repair. Again, Mr. Cowen and Mr. Hagen testified on these matters. Mr. Cowen testified that Ashford Bucks was responsible for paying for the elevator repairs as the Hotel owner and lessor (Cowen Depo., 42:4-9; 44:1-7; 65:5-8); and Remington acted as the agent of Ashford Buck for the elevator repair contract with Otis (Cowen Depo., 50:21 - 53:3). Mr. Hagen, who works for Remington, testified that Remington processes the maintenance contract bills for payment, but he does not see the checks. (Hagen Depo., 110:24-111:10; 141:6-7). Mr. Hagen also confirmed that the elevator repair work was billed separately from the maintenance contract, both of which were performed by Otis. (Hagen Depo.,

[4] Plaintiff generally complains that the witnesses were unable to explain "what happens once the decision making gets to Ashford [TRS]. . . ." (Doc. No. 27, ¶ 13). However, as outlined above, Mr. Cowen testified that various persons and entities were involved in making decisions about the elevator repairs. It is unclear what further specific information Plaintiff still seeks in this regard.

54:23-55:2). It is not clear from the deposition transcripts whether the witnesses were able to identify the entity responsible for paying the Maintenance Contract with Otis (since it does not appear they were directly asked). However, such information should be easily ascertained from the documents produced by Defendants, including but not limited to the Maintenance Contract and the paid invoices. Plaintiff cites to no specific question concerning payment that Messrs. Hagen and/or Cowen were unable to answer. Plaintiff's motion to compel further testimony as to this category is therefore denied.

## IV. CONCLUSION

In sum, based upon the record before the Court, the witnesses produced were able to answer all questions posed to them.[5] Defendants have complied with the Rule 30(b)(6) deposition notice. Plaintiff's motion for an order compelling Defendants to produce another corporate designee will be denied. An appropriate Order follows.

BY THE COURT:

/s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE

---

[5] Plaintiff cites to no specific questions concerning the seven matters listed in the deposition notice that the designees were unable to answer. However, Plaintiff complains that the person in charge of the elevator repairs, Mr. Granholm, was unable to identify the Ashford entity to which he reported. (Doc. No. 27, ¶ 12). Plaintiff will be permitted to conduct limited written discovery to get this information, and is hereby granted leave to file one additional interrogatory and/or request for admission on Defendant Ashford TRS. Plaintiff shall serve this supplemental discovery forthwith, and Defendant is urged to provide a response as soon as possible. The Court intends to move forward with this case, consistent with the most recent Scheduling Order.