IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSE COLON,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| v. | : | No.: 11-cv-1464 |
| | : | |
| **ASHFORD BUCKS COUNTY, LLC d/b/a** | : | |
| **SHERATON BUCKS COUNTY HOTEL and** | : | |
| **ASHFORD TRS SAPPHIRE VI, LLC d/b/a** | : | |
| **SHERATON BUCKS COUNTY HOTEL and** | : | |
| **REMINGTON LODGING and** | : | |
| **HOSPITALITY LP and** | : | |
| **OTIS ELEVATOR COMPANY,** | : | |
| Defendants. | : | |

## M E M O R A N D U M

**SITARSKI, M. J.**                                                                                                **November 6, 2012**

Currently pending before the Court is a motion for summary judgment filed by Defendant Otis Elevator Company. For the following reasons, the motion will be **DENIED**.

### I.  BACKGROUND

On April 17, 2009, a fire occurred at the Sheraton Bucks County Hotel ("Hotel") where Plaintiff worked. (Doc. No 1, ¶15). As a result of the fire, the Hotel elevators, including the service elevator, stopped operating. (Doc. No. 1, ¶ 15).

At all relevant times, Ashford Bucks County, LLC ("Ashford Bucks") was the owner and lessor of the Hotel; Ashford TRS Sapphire VI, LLC ("Ashford TRS") was the lessee and operator of the Hotel; and Remington Hotel and Lodging LP ("Remington") was the entity responsible for managing the Hotel operations, including maintenance. (Doc. No. 1, ¶¶ 7-9). At all relevant times, Otis had a contract with the Hotel for the service and maintenance of the Hotel elevators

("Maintenance Contract"), including the elevator in which Plaintiff claims to have been injured. (Doc. No. 1, ¶ 13).[1]

The Maintenance Contract provides, in relevant part, that Otis will "maintain the elevator equipment," and "use reasonable care to see that the equipment is maintained as set forth herein." (Doc. No. 34, Ex. C). The Maintenance Contract further provides that Otis will "regularly and systematically examine, adjust, lubricate, and if conditions warrant . . . repair or replace" various agreed to equipment. (Doc. No. 34, Ex. C).

Thus, on the date of the fire, and pursuant to the Maintenance Contract, Otis was called to the Hotel to put the elevators back into working condition. Otis apparently performed some work on the Hotel elevators at that time. (Doc. No. 1, ¶ 16). The next day, on April 18, 2009, in the course of his employment, Plaintiff was using the Hotel service elevator. Plaintiff claims that the elevator doors allegedly closed on Plaintiff's arm, causing injury. (Doc. No. 1, ¶ 19).

II.     PROCEDURAL HISTORY

On March 2, 2011, Plaintiff filed suit against the Hotel owner ("Ashford Bucks"), the Hotel operator ("Ashford TRS"), and the elevator repair company ("Otis"), for negligence based on a contract between Otis and the Hotel. Plaintiff has also named the Hotel manager

---

[1] Defendant Otis admits that it had an elevator Maintenance Contract with the Hotel; however, Otis objects to Plaintiff's characterization of the terms as stated in Plaintiff's Complaint at paragraph 13, averring that the terms of the contract speak for themselves. (Doc. No. 5, ¶ 13). The original elevator Maintenance Contract between Otis and the former owner of the Hotel, "Household OPEB 1 Inc. d/b/a Sheraton Bucks County Hotel" was assumed by Ashford Bucks upon purchase of the Hotel, and the obligations and liabilities associated with the Maintenance Contract were later transferred to the Hotel lessee, Ashford TRS. (Doc. No. 30, Ex. D, 19:14-24)(Doc. No. 30, Ex. B-4 ¶ 6).

("Remington") as a Defendant. (Doc. No. 1, ¶ 11).[2]  On March 21, 2011, Otis filed an Answer to the Complaint. (Doc. No. 5).[3]  Plaintiff's claim against Otis is the subject of this Memorandum.

This matter was initially assigned to District Court Judge C. Darnell Jones, II.  On September 14, 2011, the parties consented to the exercise of jurisdiction by a United States Magistrate Judge under 28 U.S.C. 636(c) and Fed. R. Civ. P. 73, and the matter was referred to me. (Doc. No. 14).

On August 3, 2012, Defendant Otis Elevator Company ("Otis") filed the instant Motion for Summary Judgment. (Doc. No. 34).  Defendant moves for summary judgment on the grounds that Plaintiff has failed to prove that Otis was negligent. (Doc. No. 34). Specifically, Otis argues that Plaintiff has failed to prove that Otis had any notice of the elevator's alleged defective condition. (Doc. No. 34).  Further, Otis asserts that Plaintiff's expert report fails to produce any evidence that the alleged accident was the result of any failure by Defendant to meet the standard of care. (Doc. No. 34).  A Response was filed. (Doc. No. 39).  Fact discovery closed on June 25, 2012. (Doc. No. 23).  Accordingly, this matter is now ripe for disposition.

### III.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

---

[2] Defendant Remington is incorrectly named "Remington Hotel and Lodging LP" in the Complaint.  The entity is actually "Remington Lodging & Hospitality, LLC" because the former was renamed in 2008. (Doc. No. 7).

[3] Otis' Answer included Crossclaims against Ashford Bucks, Ashford TRS, and Remington for contribution and indemnification. (Doc. No. 5, ¶¶ 13-14).  Similarly, Ashford Bucks, Ashford TRS, and Remington filed an Answer to the Complaint and Crossclaims against Otis. (Doc. No. 7, ¶¶ 1-4).  On August 24, 2012, Defendants withdrew their respective crossclaims, thereby rendering such claims moot. (Doc. No. 44).

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is sufficient evidence from which a jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) *(citing United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987). If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor." *Liberty Lobby*, 477 U.S. at 255.

The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the moving party carries this initial burden, the non-moving party must "come forward with specific facts showing there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. The non-moving party must present something more than mere allegations, general denials, vague statements, or suspicions. *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992); *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982); *Liberty Lobby*, 477 U.S. at 249 (holding plaintiff may not proceed to jury trial "without any significant probative evidence tending to support the complaint"). Instead, the non-moving party must present specific facts and "affirmative evidence in order to defeat a properly supported

motion for summary judgment." *Liberty Lobby*, 477 U.S. at 257.

**IV.     DISCUSSION**

Otis moves for summary judgment on Plaintiff's negligence claim asserted against it. (Count IV).  To make out a claim for negligence under Pennsylvania law, the plaintiff must establish:  (1) duty of care; (2) breach of the duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual injury to the plaintiff.  *Johnson v. SJP Mgmt. LLC*, C.A. No. 07-5545, 2009 WL 367539 (E.D. Pa.. Feb. 12, 2009).

When duty arises under a contract, it is clear that a contracting party may be held liable to third parties for injuries caused by a failure to perform properly such contractual undertaking. *Evans v. Otis Elevator Co.*, 168 A.2d 573, 575 (Pa. 1961) (justifying rule and stating when "a person undertakes by contract to make periodic examinations and inspections of equipment such as elevators," it is reasonably foreseeable "that the normal and natural result of his failure to properly perform such undertaking might result in injury . . . to third persons").  A contracting party's duty to third parties and the subsequent questions of breach and causation are "measured by the nature and scope of its contractual undertaking." *Farabaugh v. Pa. Tpk. Comm'n*, 911 A.2d 1264, 1283 (Pa. 2006) (citing *Evans*, 168 A.2d at 576).  Liability for negligent elevator maintenance may attach to a defendant contractor where:  (1) defendant undertook to inspect the elevator at regular intervals; (2) the elevator was in a defective or dangerous condition at the time of the plaintiff's injury; and (3) such defective or dangerous condition was discoverable by reasonable inspection.  *Evans*, 168 A.2d at 576.  If such defective or dangerous condition were discoverable by reasonable inspection, the defendant would be found liable regardless of any

privity of contract. *Id.*

Otis had an Elevator Maintenance Contract with the Hotel. (*See* Doc. No. 34, Ex. B ¶ 13). Plaintiff claims that Otis was negligent in its inspection of the Hotel elevator under the terms of the elevator Maintenance Contract. (Doc. No. 39 at 9). Otis argues that it is entitled to summary judgment on Plaintiff's negligence claim because: (1) Plaintiff has offered no evidence that Otis could have foreseen or prevented the elevator doors from suddenly and unexpectedly closing on Plaintiff through regular maintenance, or reasonable investigation; (2) Plaintiff's expert report does not sufficiently establish the requisite causation. (*See* Doc. No. 34 at 6-13).

On the issue of notice, Otis argues that, for liability to attach, Plaintiff must prove that the alleged dangerous condition was "discoverable by reasonable inspection." (*See* Doc. No. 34 at 8-9). Otis contends that Plaintiff has offered no evidence that Otis "could have foreseen or prevented the elevator doors from suddenly and unexpectedly closing on plaintiff, whether through more zealous maintenance or otherwise," and therefore, Otis is not subject to liability to Plaintiff. *Johnson v. SJP Mgmt. LLC*, C.A. No. 07-5545, 2009 WL 367539 at *16 (E.D. Pa.. Feb. 12, 2009). Plaintiff responds that Otis' contractual obligation is "not merely to react to complaints," but rather a "proactive duty to inspect and repair, service, and maintain the elevator." (Doc. No. 39 at 9).

The test for liability to third parties is whether the defective or dangerous condition was discoverable by reasonable examination or inspection. *Evans v. Otis Elevator Co.*, 168 A.2d 573, 576 (Pa. 1961). In *Evans*, the plaintiff was injured when the elevator in which he was riding struck something, which caused a board from the elevator roof to fall on the plaintiff's head. The elevator was subject to a maintenance contract with Otis. *Id.* at 577. The defendant argued that,

6

although its inspector noted that the boards were starting to shake and rattle, any deteriorating or dangerous condition was not discoverable by a visual inspection. *Id.* Nevertheless, the *Evans* court found that a reasonable jury could infer that careful inspection, based on such "audible notice of possible danger," would have led to exposure of the defective condition. *Id.* The court reasoned that "danger signals, when heard, cannot be ignored, even though the condition be not observable on visual examination." *Id.* The court reasoned that the "noises and sounds which emanated from these boards were of such warning nature as to demand further and more careful examination." *Id.*

Here, one day prior to Plaintiff's injury, Otis was summoned to the Hotel to inspect the elevators following a fire on the premises. When Otis' technician arrived, the fire had been extinguished, but water from the fire hoses had left behind water, which was "just pouring in, dripping everywhere, like a shower," throughout all of the Hotel's elevator shafts. (Doc. No. 34, Ex. F). Additionally, the technician found that the elevator controllers were "shut down with major water problems," including blown fuses and wet door locks. (Doc. No. 34, Ex. F).

As noted above, in *Evans*, the defendant technician noted a rattling noise coming from the elevator boards during a routine maintenance inspection prior to that plaintiff's injury. The *Evans* court found that a reasonable jury could infer the existence of a dangerous condition from this audible "danger signal." *Evans*, 168 A.2d at 577. The *Evans* court ruled this way despite the inconspicuous nature of the boards' dangerous condition. *Id.* Likewise, on the record present in this case, a jury could reasonably infer that a deluge pouring through the elevator shafts was a visual "signal," or notice, of possible danger, which could have posed a real danger to elevator passengers.

The record indicates that Otis, based on its Maintenance Contract with the Hotel, had a duty to reasonably maintain and systematically examine and repair the Hotel elevators.  Moreover, Otis had a duty to perform this contract in a manner that would not injure third parties (such as Mr. Colon).  The record could support a finding that because Otis failed to discover the latent defective or dangerous condition of the elevator after the fire, Otis breached its duty to Plaintiff.  Whether Plaintiff's injuries can be attributed to the water damage from the fire, or to some other malfunction of a component part, is a question of fact.  The record supports the inference that a malfunction one day after a circuit outage and service shut down was caused by Otis' failure to ascertain the full extent of the water problems.[4]  Accordingly, we defer to the jury to determine whether the dangerous or defective condition of the elevator could and should have been ascertained by Otis' obligations under the Maintenance Contract.

Otis' second argument is that Plaintiff's expert report fails to produce any probative evidence of malfunction, or any causal link between Defendant's alleged breach of duty and such malfunction.  Defendant has reserved its right to contest the admissibility of the expert report at trial.  As previously stated, the facts could permit a reasonable jury to infer existence of a defective or dangerous condition at the time of Plaintiff's injury, which was discoverable by reasonable examination.  Whether the expert report is admissible under *Daubert* will be determined prior to trial.  Accordingly, summary judgment must be denied.

---

[4] *See Evans*, 168 A.2d at 577-78 (finding ample support for defendant's negligence based on court's determination that "the jury could reasonably have inferred" defendant's breach).

V.   **CONCLUSION**

Questions of material fact preclude the entry of summary judgment in favor of Defendant Otis. For this reason, the instant Motion for Summary Judgment is **DENIED**.

An appropriate Order follows.

BY THE COURT:

/s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE