# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSE COLON,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No.: 11-cv-1464** |
| | : | |
| **ASHFORD BUCKS COUNTY, LLC d/b/a** | : | |
| **SHERATON BUCKS COUNTY HOTEL and** | : | |
| **ASHFORD TRS SAPPHIRE VI, LLC d/b/a** | : | |
| **SHERATON BUCKS COUNTY HOTEL and** | : | |
| **REMINGTON LODGING and** | : | |
| **HOSPITALITY LP and** | : | |
| **OTIS ELEVATOR COMPANY,** | : | |
| **Defendants.** | : | |

## M E M O R A N D U M

**SITARSKI, M. J.**                                                                    **November 7, 2012**

Currently pending before the Court is a motion for summary judgment filed by

Remington Lodging & Hospitality, LLC.  For the following reasons, the motion will be

**GRANTED**.


## I.      INTRODUCTION

On March 2, 2011, Plaintiff filed suit against Ashford Bucks County, LLC ("Ashford

Bucks"), Ashford TRS Sapphire VI, LLC ("Ashford TRS"), Remington Hotel and Lodging LP

("Remington L&H, LLC"),[1] and Otis Elevator Company ("Otis").  All of these entities were

connected with the Sheraton Bucks County Hotel ("the Hotel") in some manner.  Plaintiff claims

Defendants are liable for negligence based on a contract between Otis and the Hotel.  (Doc. No.

---

[1] Defendant Remington L&H, LLC (incorrectly named "Remington Hotel and Lodging
LP" in the Complaint) is actually "Remington Lodging & Hospitality, LLC," as the former was
renamed Remington Lodging & Hospitality, LLC in 2008.  Cowen Dep. at 22-24.

1, ¶ 11).   On March 23, 2011, Ashford Bucks, Ashford TRS, and Remington, L&H, LLC, filed an Answer to the Complaint.  (Doc. No. 7).[2]

This matter was initially assigned to District Court Judge C. Darnell Jones, II.  On September 14, 2011, the parties consented to the exercise of jurisdiction by a United States Magistrate Judge under 28 U.S.C. 636(c) and Fed. R. Civ. P. 73, and the matter was referred to me.  (Doc. No. 14).

Fact discovery closed on June 25, 2012.  (Doc. No. 23).  On July 25, 2012, Remington L&H, LLC filed the instant motion for summary judgment.  (Doc. No. 31).  Remington, L&H, LLC, asserts that summary judgment is appropriate because they are entitled to immunity under the Pennsylvania Workers' Compensation Act ("The Act").  Specifically, Remington L&H, LLC argues they were Plaintiff's employer at the time of the alleged incident and thus are entitled to immunity under the exclusivity provision of the Act.  (Doc. No. 31).  Plaintiff disputes that Remington L&H, LLC was Plaintiff's employer, and argues that material issues of fact exist on the question of which entity was Plaintiff's employer.  (Doc. No. 35).

II.     **BACKGROUND**

Plaintiff was hired to work at the Sheraton Bucks County Hotel ("the Hotel") in 2008. During all relevant times, the Hotel was owned by Ashford Bucks.  (Doc. No. 35-1 at 2).

---

[2]  Defendants Ashford Bucks County LLC, Ashford Sapphire TRS VI, LLC and Remington Lodging & Hospitality, LLC's Answer included a Cross-claim against Otis for indemnification and contributory liability.  (Doc. No. 7 at 9, ¶¶ 2-3).  Similarly, Otis filed an Answer to the Complaint and cross-claims against Defendants Ashford Bucks, Ashford TRS, and Remington for indemnification and contributory liability.  (Doc. No. 5, ¶¶ 13-14).  On August 24, 2012, Defendants withdrew their respective cross-claims, thereby rendering such claims moot. (Doc. No. 44).

Ashford Bucks leased the Hotel property to Ashford TRS VI, who in turn entered into a maintenance contract with Remington L&H, LLC. *Id.*

On April 17, 2009, a fire occurred at the Hotel. (Doc. No. 1, ¶15). As a result of the fire, the hotel elevators, including the service elevator, stopped operating. (Doc. No. 1, ¶ 15). The next day, April 18, 2009, Plaintiff was using the Hotel service elevator in the course of his employment, when the elevator doors allegedly closed on Plaintiff's arm, causing injury. (Doc. No. 1, ¶ 19).

As a result of this injury, Plaintiff received worker's compensation under the Act. Plaintiff entered into a Compromise and Release Agreement on January 26, 2011. (Doc. No. 31, Ex. 2-B). On that same day, worker's compensation Judge Joseph McManus entered an order and finding of fact ratifying the agreement, finding that Plaintiff knew and understood the terms of the agreement. (Doc. No. 31, Ex. 3-C). Plaintiff's worker's compensation documents list Remington Hotel Corporation, not Remington L&H, LLC, as Plaintiff's employer. Further, Remington Hotel Corporation is the listed entity who paid Plaintiff's worker's compensation premiums.[3] Remington L&H, LLC argues that this was a mistake, and Remington L&H, LLC was actually Plaintiff's employer at the relevant time. (Doc. No. 31, ¶ 20).

_____

[3] This fact is disputed by Remington L&H, LLC. Remington L&H, LLC points to a letter from Liberty Mutual Life Insurance, which shows that Remington L&H, LLC holds a lien for the payment of benefits to Plaintiff. In addition, Remington L&H, LLC points to deposition testimony of its general counsel, James Cowen. Mr. Cowen testified that Remington Hotel Corporation has one bank account through which it pays workers compensation premiums for all Remington entities. Cowen Dep. at 25-26. It then bills each entity for their share of the premium payment. *Id.* at 27. Thus, according to Mr. Cowen, Remington L&H, LLC ultimately pays the premiums, despite the fact that it is Remington Hotel Corporation who issues the payment check. *Id.*

### III.     STANDARD OF REVIEW

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is sufficient evidence from which a jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) *(citing United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987). If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor." *Liberty Lobby*, 477 U.S. at 255.

The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the moving party carries this initial burden, the non-moving party must "come forward with specific facts showing there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. The non-moving party must present something more than mere allegations, general denials, vague statements, or suspicions. *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992); *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982); *Liberty Lobby*, 477 U.S. at 249 (holding plaintiff may not proceed to jury trial "without

4

any significant probative evidence tending to support the complaint"). Instead, the non-moving party must present specific facts and "affirmative evidence in order to defeat a properly supported motion for summary judgment." *Liberty Lobby*, 477 U.S. at 257.


IV.     **DISCUSSION**

Remington L&H, LLC argues that they are entitled to summary judgment because they are immune from suit under the exclusivity provision contained in 77 P.S. § 481(a). Specifically, Remington, L&H, LLC argues that Plaintiff's receipt of worker's compensation benefits and an award through a Compromise and Release agreement is Plaintiff's exclusive remedy against his employer, whom –  they argue – is Remington Lodging & Hotel, LLC. Plaintiff does not dispute that he cannot bring a tort action against his employer under the the Act. Rather, Plaintiff argues summary judgment is inappropriate because the movant – Remington L&H, LLC – is not Plaintiff's employer, and thus not entitled to assert immunity under the exclusivity provision.

"In exchange for worker's compensation benefits, employees forfeit the right to sue their employers in tort for their work related injuries; in turn, the employers receive protection from potentially larger tort verdicts." *McGrenaghan v. St. Denis School*, 979 F.Supp. 323, 329 (E.D. Pa. 1997) *citing Poyser v. Newman & Co., Inc.*, 514 Pa. 32, 522 A.2d 548 (1987). In order to determine if the exclusivity provision of the Act applies, the Court must identify the Plaintiff's employer. *Globe Indemnity Co. v. Liberty Mut. Ins. Co.*, 138 F.2d 180, 183 (3d Cir. 1943). The Act does not explicitly define employer and employee, but  notes that they encompass roles similar to those in a master-servant relationship. *Thompson v. Fare*, 173 F. Supp. 2d 368 (E.D. Pa. 2001). Thus, the identification of the employer is determined by the existence of an

employment relationship.  *Id.*. The existence of an employment relationship is a question of law, which is to be decided based on established facts.  *See Joyce v. Super Fresh Food Markets, Inc.*, 815 F.2d 943, 947 (3d Cir. 1987) ("any discrepancy in the facts would be for a jury to resolve; however, whether the facts as they are determined to exist constitute an employment relationship is strictly a question of law").

**A.      The "functional test" applies to the instant dispute.**

When the identification of an employer is between two affiliated entities, Pennsylvania courts apply the "functional test" in order to determine which entity is the employer under the Act.  *Joyce v. Super Fresh Food Markets, Inc.*, 815 F.2d at 945 (3d Cir. 1987) *citing Mohan v. Publicker Industries, Inc.*, 422 Pa. 588, 222 A.2d 876 (1966).  "The functional analysis focuses on the function performed by each corporation and by the employee.  If the corporate functions are distinct and in the performance of his duties, the employee is shown to have acted in furtherance of the functions of only one, or essentially one of the corporations, then the corporation will be deemed his employer."  *Thompson v. Fare*, 173 F. Supp. 2d at 372 *citing Mohan*, 222 Pa. at 876.[4]

Remington L&H, LLC argues that they are Plaintiff's employer under the functional analysis test because Plaintiff furthered their function in the performance of his duties.  As noted previously, the functional analysis applies when the identification of an employer is between two

---

[4]  If the functional analysis does not establish that the corporate entities in question have distinct functions, or that the employee was acting in furtherance of only one of the entities, the Court resolves the issue by turning to the "right of control" test.  *Thompson,* 173 F. Supp. 2d at 372 (*citing Joyce*, 815 F.2d at 945)*.*  The right of control test examines "indicia of control" to determine which entity exercised sufficient control over a purported employee to form a "master-servant" relationship.  *Id.*

affiliated entities.  Thus, in *Mohan*, the functional analysis was used to identify the employer as between a parent corporation and its subsidiary corporation.  222 A.2d at 590-591; *see also Kiehl v. Action Mfg. Co.*, 535 A.2d 571, 573 (Pa. 1987).  The Third Circuit extended the reach of the functional analysis to situations where the determination of the employer is between two sister corporations.  *Joyce*, 815 F.2d at 945.  As explained in *Mohan*, the functional analysis is applied because "there are employees working for corporations where control is constantly changing as the result of merger, consolidation or creation of a new entity intended to take advantage of a tax privilege."  222 A.2d at 591.  The Pennsylvania Supreme Court then explained that in this circumstance, "courts must analyze the issue of control in terms of function in order to determine for which corporation an employee in reality works."  *Id.*

In this instance, the identification of Plaintiff's employer is not between two affiliated corporations, but rather between a corporation and a limited liability company ("LLC").  However, given the relationship of the entities involved, the policies underlying the application of the functional analysis are implicated.  Specifically, Remington L&H, LLC and Remington Hotel Corporation are affiliated entities in a larger corporate structure that has been reorganized several times, and the identification of an "employer" is best determined by examining the functions of the entities involved.  *See e.g. Mohan*, 222 A.2d at 879.

Mr. Cowen's deposition testimony reveals that Remington L&H, LLC was formed after various mergers and consolidations of numerous entities.  Cowen Dep. at 17-17.  In addition, Remington L&H, LLC is part of a larger ownership group, Remington Holdings LP, which

includes various entities and corporate permutations.[5]  *Id.* at 47..  Likewise, Remington Hotel

Corporation has also undergone changes in function as a result of the mergers of affiliated

Remington entities.  Cowen Dep at. 25.  Regarding the relationship between Remington Hotel

Corporation and Remington L&H, LLC, Mr. Cowen testified as follows:

> Remington Hotel Corporation was a corporation that existed prior
> to 2003 and was at one time not only the hotel manager of certain
> hotel properties, but also the owner of certain hotel properties.  In
> 2003, when Ashford Hospitality Trust was formed and went
> public, it bought certain assets of Remington Hotel Corporation,
> certain hotel assets.  And Remington Lodging & Hospitality, LP,
> was formed to...take on the management of certain properties that
> were now owned by Ashford Hospitality Trust and its affiliates
> and/or subsidiaries.  From 2003 forward, Remington Hotel
> Corporation ceased to be an operating entity.  And while it still
> exists today, it has no contracts, has no – it doesn't operate.  It has
> no employees. It doesn't do anything other than exist.

Cowen Dep. at 24-25.

Based on the foregoing, this Court finds that the two entities involved have a relationship

sufficient to invoke the functional analysis.  The two entities are part of a complex corporate

structure such that mergers and the formation of new entities have made it difficult to determine

who exerted control over certain employees at a given time.  Accordingly, the policies underlying

the invocation of the functional analysis are present and this Court will begin its analysis with the

functional test.[6]

---

[5]  Mr. Cowen testified that Remington L&H, LLC has a single member, Remington
Holdings, LP, which has a general partner; Remington Holdings, GP, LLC, which has as its
members Monty Bennett and Archie Bennett, who are, respectively, the CEO and chairman of
the board of Ashford Hospitality Trust.  Cowen Dep. at 24.

[6]  This Court remains mindful that in certain situations, unique problems will arise due to
the characteristics of LLC's such that the functional analysis will not be invoked.  *See e.g. Stecyk
v. Bell Helicopter Textron*, 1997 U.S. Dist. LEXIS 17888, CCH Prod. Liab. Rep. P15108 (E.D.

**B.      Remington H&L, LLC is Plaintiff's employer under the functional analysis.**

Applying the functional analysis, this Court will now examine the functions of Remington L&H, LLC, Remington Hotel Corporation and Plaintiff.

As to Plaintiff, it is undisputed that he worked as a maintenance worker, responsible for day to day upkeep and maintenance at the Hotel.  Carrie Meyers, Director of Human Resources for Remington L&H, LLC, described Plaintiff's duties as including "everything from painting rooms, plumbing issues, if there was a clog or if there was a maintenance issue in rooms, like fixing tile or plumbing problems and receiving guest calls during his shift."   Myers Dep. at 9.

The record reveals Remington L&H, LLC functioned as a hotel maintenance company. James Cowen, general counsel for various Remington entities, testified that the function of Remington L&H, LLC was to perform day to day maintenance pursuant to a contract entered into with the Hotel's lessee, Ashford TRS.  Cowen Dep. at 38-39.  The general manager of Remington L&H, LLC, Scott Hagan, also testified that Remington L&H, LLC is a "hotel management company."  Hagan Dep. at 8.  Likewise, Carrie Meyers testified that on July 7, 2004, Remington L&H, LLC became the management company at the Hotel.  Meyers Dep. at 6.

As for Remington Hotel Corporation, Mr. Cowen testified that during Plaintiff's employment, Remington Hotel Corporation functioned solely as a title holder on the lease for corporate headquarters in Dallas.  Cowen Dep. at 98.  He also testified that the bank account from which the workers compensation premiums were paid was controlled by Remington Hotel

---

Pa. Oct. 31, 1991).  However, in this instance, the unique issues that can arise with LLC's are not present.  Rather, the present situation is more analogous to one in which two related corporate entities are involved.  Specifically, the evolving corporate structure and shared ownership among the various Remington entities require this Court to examine the functions of the purported employers to identify the true employer.

Corporation, who then re-billed the various Remington entities for their share of the premiums.[7]
*Id.* at 25-26.

Plaintiff has proffered evidence in the form of various news articles showing that Remington Hotel Corporation hired a vice president in 2004, and received a hotel maintenance award in 2005. (Doc. No. 35-3). However, there is no evidence suggesting that Remington Hotel Corporation was involved in anything other than serving as a title holder and paying workers compensation premiums after 2005.[8] And, as noted above, Plaintiff's employment at the Hotel did not commence until 2008.

In sum, it is undisputed that Plaintiff's job function was that of a maintenance worker. Defendant has pointed to undisputed deposition testimony, indicating that Remington L&H, LLC's function was also hotel maintenance. Plaintiff has proffered no evidence to contradict this. Rather, Plaintiff has proffered evidence that Remington Hotel Corporation paid worker's compensation premiums for Plaintiff, and was listed as the employer on the worker's compensation documents. Thus, the record indicates that Remington Hotel Corporation functioned as payer of worker's compensation premiums for various Remington entities, as well as the lessee of corporate headquarters in Dallas. There is no evidence that Remington Hotel Corporation functioned as a hotel maintenance company during the period of Plaintiff's

---

[7] Mr. Cowen testified that although Remington Hotel Corporation directly paid the workers compensation premiums, it was Remington H&L, LLC who was actually responsible for premium payments for their workers. This testimony finds support in an insurance lien letter, which provides Remington L&H, LLC with a lien for benefits paid to Plaintiff through worker's compensation.

[8] As noted previously, the various Remington entities have undergone a number of reorganizations and seen their functions change. This Court will focus on the functions of the entities during the relevant time of Plaintiff's employment.

employment.

Plaintiff's argument in opposition to the motion for summary judgment centers on the

fact that Remington Hotel Corporation was listed as the employer on workers compensation

documents.[9]  "The payment of workers compensation premiums, while certainly not dispositive,

is a relevant consideration in determining the identity of the employer."  *Gallagher v. Pa. Liquor

Control Bd.,* 584 Pa. 362, 370 (2005).  Thus, the fact that Remington Hotel Corporation paid

workers compensation premiums may, when coupled with other factors, allow a reasonable jury

to infer that an entity had employees, and thus was operational.[10]  However, as stated previously,

Plaintiff has offered no other evidence that Remington Hotel Corporation functioned as a hotel

maintenance company during the relevant time period.  There was no testimony or records

indicating that Remington Hotel Corporation was a party to any maintenance contract or was

responsible for costs incurred in carrying out the day to day maintenance of a hotel.  Thus, while

---

[9]  Plaintiff asserts that the order entered by the worker's compensation judge preclusively establishes Remington Hotel Corporation as Plaintiff's employer.  The Third circuit has noted that "factual findings of state agencies should be given the same preclusive effect they would be accorded in the courts of that state."  *Crossroads Cogeneration Corp. v.Orange & Rockland Utils.*, 159 F.3d 129, 135 (3d Cir. 1998) (*citing Univ. of Tenn. v. Elliott*, 478 U.S. 788, 797 (1986)).  Issue preclusion to will apply only if Plaintiff can establish: (1) the issue decided in the previous action was identical to one presented in the present action; (2) the previous action resulted in final judgment on the merits; (3) the party against whom issue preclusion is asserted was a party to the previous action or in privity with a party to the previous action; and (4) the party against whom issue preclusion is asserted had a full and fair opportunity to litigate the issue in the previous action.  *Ocasio v. Ollson*, 596 F.Supp. 2d 890, 896 (E.D. Pa. 2009).  In this case, Plaintiff's argument for issue preclusion fails as to the first element.  The issue decided in ratifying the Compromise and Release Agreement was whether Plaintiff fully understood the legal significance of the agreement contained in the stipulation.  The present motion focuses on the question of which entity is Plaintiff's employer, and the worker's compensation judge did not make a finding as to this issue.  Accordingly, issue preclusion does not apply.

[10]  The payment of workers compensation is more relevant in a "right of control" analysis which focuses on "indicia of control."

11

payment of workers compensation premiums, when coupled with other evidence, may allow a reasonable jury to infer an employment relationship, it does not support such an inference in this instance, given the absence of other evidence.

Considering the foregoing undisputed evidence, this Court finds that the functions of Remington Hotel Corporation and Remington L&H, LLC are distinct. Plaintiff's position in hotel maintenance furthered the function of Remington L&H, LLC, which was also hotel maintenance. There is no indication that Plaintiff also furthered a function of Remington Hotel Corporation, which the record established as being a lessee and check-writer for workers compensation premiums for various Remington entities. Accordingly, the Court concludes that Defendant Remington L&H, LLC is Plaintiff's employer. As such, they are entitled to immunity under the Act's exclusivity provision. Defendant's motion for summary judgment is granted.

## V.      CONCLUSION

There are no disputes of material fact that Defendant Remington L&H, LLC was Plaintiff's employer under the Pennsylvania Worker's Compensation Act, thus rendering summary judgment appropriate in favor of Moving Defendants. For the foregoing reasons, Defendant Remington L&H, LLC's Motion for Summary Judgment is **GRANTED**. An appropriate Order follows.

BY THE COURT:


  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE

12